| | |
|---|---|
| 1 | CARI A. COHORN (State Bar No. 249056) |
| | COHORN LAW |
| 2 | 101 California Street, Suite 2710 |
| | San Francisco, California 94111 |
| 3 | Telephone: (415) 993-9005 |
| | Fax: (415) 365-9650 |
| 4 | Email: cohorn@cohornlaw.com |

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT CALIFORNIA

GERALD A. FORREST, an individual doing buisness as GOSPELCHOPS,

        Plaintiff,

  v.

VIC FIRTH COMPANY, a Massachusetts corporation,

        Defendant.

Case No:

**COMPLAINT FOR**

    **(1) Federal Trademark Infringement (15 U.S.C. § 1114)**

    **(2) Federal Unfair Competition – False Designation of Origin/False Description (15 U.S.C. § 1125(a));**

    **(3) Contributory Federal Trademark Infringement (15 U.S.C. §§ 1114, 1125(a))**

    **(4) Vicarious Federal Trademark Infringement (15 U.S.C. §§ 1114, 1125(a))**

    **(5) Federal Trademark Counterfeiting (15 U.S.C. § 1114);**

    **(6) Unfair Competition (Cal. Bus. & Prof. Code § 17200); and**

    **(7) Unjust Enrichment (Cal. Civ. Code §§ 2223, 2224)**

**DEMAND FOR JURY TRIAL**

1

**COMPLAINT**

Plaintiff Gerald A. Forrest, an individual doing business as GospelChops, alleges as follows:

## NATURE OF THE ACTION

1. This is an action in law and equity for willful trademark infringement, false designation of origin/false description, contributory and vicarious trademark infringement, and trademark counterfeiting under the Lanham Act, as well as unfair competition and unjust enrichment under California state law.

2. Plaintiff Gerald A. Forrest ("Plaintiff" or Forrest") has owned and used in commerce certain trademarks, as described below, in connection with the sale and distribution of videos depicting two or more drummers playing together in "jam sessions" or "battles" and in connection with the sale and distribution of drumsticks. Forrest has also used one of the subject trademarks as a source-identifier of drumsticks sold in interstate commerce.

3. Defendant Vic Firth Company ("Defendant" or "Vic Firth"), a competitor whose offerings include drumsticks, mallets, brushes, and percussion accessories, has been competing unfairly with Plaintiff by advertising, promoting, and offering its goods for sale utilizing drum videos using confusingly similar titles and source-identifiers, impinging on the goodwill and value of Plaintiff's trademark. Defendant has engaged in this unlawful conduct with actual knowledge and in willful disregard of Plaintiff's rights, as owner of the subject trademarks.

## THE PARTIES

3. Plaintiff is, and at all times relevant hereto, has been a citizen of the State of California. Forrest does business as GospelChops and owns the registered trademarks GOSPELCHOPS (USPTO Reg. No. 77740192), GC GOSPEL CHOPS (USPTO Reg. No. 86506361), and SHED SESSIONZ (USPTO Reg. No. 5001009). (These three trademarks, all word marks, are referred to collectively herein as the "Marks").

4. Defendant Vic Firth Company ("Defendant" or "Vic Firth") is a Massachusetts corporation. Plaintiff is informed and believes that Defendant's principal place of business is in Boston, Massachusetts.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

5. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights or trademarks); 28 U.S.C. § 1338(b) (action asserting a state law claim of unfair competition joined with a substantial and related federal claim under the patent, copyright, or trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. The Court likewise has personal jurisdiction over Defendant. Defendant routinely conducts business throughout the State of California and within this district; this action arose out of Defendant's business directed to this judicial district, and the harm alleged occurred within this district. Thus, Defendant has sufficient minimum contacts with California and with this judicial district that it may be served with process under California's long-arm statute, and requiring Defendant to respond to this action does not violate due process.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant is deemed, pursuant to 28 U.S.C. § 1391(c)(2) and 1391(d), to reside in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, or a substantial part of the property that is the subject of this action is situated in this district, as alleged herein.

8. Pursuant to Civil Local Rule 120(d), this action should be assigned to the Sacramento Division of the United States District Court for the Eastern District of California because the action arose in Sacramento County.

## FACTUAL ALLEGATIONS

9. Forrest began doing business as GospelChops, and founded the GospelChops brand, in 2004. The primarily goal of the GospelChops business was to provide inspiration and education in a segment of the music world largely ignored by major media outlets and musical instrument companies, specifically, the cultural music that accompanies gospel preaching in African American churches.

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

10. On or about May 5, 2005, Forrest began using the website www.gospelchops.com to, among other things, promote and distribute information and videos related to gospel drumming. On or before January 1, 2006, Forrest began using the mark GOSPELCHOPS in commerce in connection with video recordings of two or more drummers, as described below. He also used in commerce, beginning on or before January 1, 2006, the word mark, in stylized form, GC GOSPEL CHOPS in connection with such video recordings.

11. In 2004-2005, Forrest began producing and distributing video recordings of church musicians in informal practice settings commonly known as "sheds," in which drummers engage in musical "conversations" or "battles" to challenge each other to improve their skills. The videos, first available on www.gospelchops.com and YouTube, garnered significant attention.

12. On or about May 5, 2004, Forrest began using in commerce the trademark SHED SESSIONZ. SHED SESSIONZ is a unique music video brand that produces exclusive content highlighting performances and instructional music lessons by world-famous drum musicians. Between 2005 and 2012, Mr. Forrest produced and released three volumes of the SHED SESSIONZ DVDs. The high acclaim the DVD series received (particularly beginning with Volume 2, released in 2007), as described below, created awareness of the Marks and the GospelChops brand throughout the drumming industry.

13. SHED SESSIONZ commercial video products retail for $20-$50 per DVD and have been distributed throughout the world.

14. SHED SESSIONZ branded videos have acquired a global reputation for their unique production format and exciting musical depictions showcasing multiple drummers in simultaneous performances or "battles." For example, and without limitation, SHED SESSIONZ captured the attention of *Modern Drummer Magazine* (see, *e.g.*, www.moderndrummer.com/2006/11/thomas-pridgen/) and Noisey.com, along with Grammy Award-winning drum musicians and percussionists around the world. For example, Grammy Award-winning drummer, Ronald Bruner Jr. is featured on the SHED SESSIONZ VOL. 2 DVD and legendary jazz drummer and Grammy Award winner, Peter Erskine, was a featured

drummer on a GOSPELCHOPS branded DVD in 2009. The GOSPELCHOPS brand also captured the attention of *DRUM! Magazine* (see, e.g., www.drummagazine.com/matt-garstka-lets-get-technical/) in its national coverage of Matt Garstka. *Rolling Stone* referenced SHED SESSIONZ branded videos in its article, "100 Greatest Drummers of All Time" (see, e.g., www.rollingstone.com/music/lists/100-greatest-drummers-of-all-time-20160331/gene-krupa-20160325/). In addition to being recognized for their quality and originality, SHED SESSIONZ videos are distinguished by, and its brand has become recognized through, high-energy drum performances featuring multiple drummers in jam settings or "battles."

15. The SHED SESSIONZ, GOSPELCHOPS, and GC GOSPEL CHOPS brands serve as source indicators for commercial music videos produced by Forrest.

16. No other line of music videos featuring drummers utilized a brand name confusingly similar to SHED SESSIONZ, GOSPELCHOPS, or GC GOSPEL CHOPS when Forrest introduced those brands commercially in 2005 and 2006.

17. The SHED SESSIONZ, GOSPELCHOPS, and GC GOSPEL CHOPS trademarks are inherently distinctive or, alternatively, have acquired distinctiveness with respect to the relevant goods through their exclusive commercial use since 2005-2006.

18. Having successfully entered the niche gospel drumming market, Forrest next wished to expand his brand by marketing and selling a line of branded drumsticks – *and he did so through a business relationship with Vic Firth*. During the 2008 National Association of Music Merchants Show, Forrest met with Marco Soccoli, Vic Firth's Director of Artist Relations, to discuss entering into a manufacturing relationship. At the meeting, Mr. Forrest presented Mr. Soccoli with DVD copies of SHED SESSIONZ VOL. 1 and SHED SESSIONZ VOL. 2.

19. Mr. Soccoli, already aware of the SHED SESSIONZ reputation in the drumming marketplace, agreed on behalf of Vic Firth to manufacture drumsticks for Forrest printed with the GC GOSPELCHOPS stylized word mark. Forrest expressed his desire to market and sell an entire product line of drumsticks through www.gospelchops.com. Mr. Soccoli disagreed with authorizing multiple sizes at that time, but recommended the standard size 5A drumstick

because it was the largest selling configuration in the Vic Firth catalog. Subsequently, Mr. Soccoli authorized the final design for the drumstick, and Forrest made several wholesale purchases from Vic Firth of the 5A drumsticks between 2008 and 2013.

20. Forrest sold the GC GOSPELCHOPS-branded size 5A drumsticks on the GOSPELCHOPS website, along with the SHED SESSIONZ DVDs, from 2008 to 2013.

21. Upon Mr. Soccoli's departure from Vic Firth, Forrest began corresponding with Joe Testa, the new Director of Artist Relations. Mr. Testa, as an agent of Vic Firth, subsequently authorized the manufacturing of a second drumstick model bearing the GC GOSPELCHOPS stylized word mark, the 5B model. Forrest made one or more wholesale purchases of the 5B model drumsticks and sold the GC GOSPELCHOPS-branded size 5B drumsticks on the GOSPELCHOPS website, along with the SHED SESSIONZ DVDs, from 2011 to 2013.

22. On or about February 18, 2013, Mark Dyke, Vic Firth's Vice President and Director of Sales and Marketing, emailed Mr. Forrest stating that Vic Firth would cease manufacturing the drumsticks that Mr. Forrest had marketed, promoted, and sold internationally for several years. Notably, Mr. Dyke stated that he had visited www.gospelchops.com, where the SHED SESSIONZ and GC GOSPELCHOPS products were prominently advertised and displayed.

23. Mr. Dyke offered to manufacture for Forrest a lower quality drumstick model under terms similar to Forrest's prior agreement with Mr. Soccoli. Wishing to avoid losing all value of the goodwill created under his brands through his prior drumstick marketing efforts, Forrest agreed to purchase the lower quality model. After receiving the first order of those drumsticks, Forrest was greatly dissatisfied with the product quality and ceased all purchases from Vic Firth in 2013.

24. Shortly thereafter, unbeknownst to Plaintiff, Defendant began unfairly competing with Plaintiff. Defendant solicited the cooperation of Casey Cooper, a YouTube celebrity drummer known as "Coop3rDrumm3r," in the creation and launch of a new video series advertising drums and drumsticks. The video series was and is entitled "The Shed Sessions."

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

25. On or about May 28, 2014, unbeknownst to Plaintiff, Defendant released the first video of its so-called "Shed Sessions" video series, entitled "Shed Session w/ Gerald Heyward! Crazy Drum Solos & Gospel Chops Drumming!"

26. Mr. Cooper released at least three infringing videos to his approximately 500,000 YouTube subscribers under similar titles. Vic Firth's website linked directly to the infringing content on Mr. Cooper's YouTube channel.

27. Defendant continued competing unfairly with Plaintiff by advertising, promoting, and offering its goods for sale utilizing confusingly similar drum videos entitled "The Shed Sessions" or "Shed Sessions." These advertisements bear the SHED SESSIONZ trademark or, alternatively and without limitation, a confusingly similar trademark which impinges on the goodwill in SHED SESSIONZ. Specifically, Defendant acted in concert with musicians including but not limited to Casey Cooper, Peter Erskine, Matthew Garstka, Gerald Heyward, and Anika Nilles (collectively the "Drummers") to create and promote the infringing videos.

28. Upon information and belief, Defendant invited, induced, facilitated, or encouraged the Drummers as its agents to participate in the production, marketing, promotion, and/or distribution of video advertisements that Defendant knew or should have known were infringing upon Plaintiff's Marks.

29. Vic Firth caused confusion in the marketplace by, *inter alia*, featuring drummers in its "The Shed Sessions" advertising series who had previously appeared on GOSPELCHOPS SHED SESSIONZ DVDs. Actual confusion also is evident in social media posts by general consumers and relevant Google searches.

30. Defendant solicited, invited, and controlled the Drummers' participation, production, creation, or distribution of video advertisements prominently displaying the infringing and/or counterfeit marks. By placing hyperlinks on its website to infringing video advertisements on the Drummers' websites or YouTube web pages, Defendant manifested its assent for the Drummers to act on its behalf and/or ratified the conduct of its agents.

31. Plaintiff first learned of Defendant's infringement in or about November 2014.

32.     Vic Firth uses the infringing videos as promotion, marketing, and advertising tools for its drumstick products. At least six (6) different drumstick products, including, Gerald Heyward Signature Drumstick, American Classic 55A, Heritage Brush, Peter Erskine "Ride Stick," and SHOGUN 5B have been openly advertised by the infringing videos and "Buy Now" buttons are located near the infringing videos on the Vic Firth website.

33.     Vic Firth has released at least thirty (30) drum videos under the source-identifier "Shed Sessions," which has caused irreparable harm to both the SHED SESSIONZ and GOSPELCHOPS brands. The infringing videos have been continually marketed, promoted, and distributed on www.vicfirth.com, the YouTube.com channel of Vic Firth, and other social media websites, and they have received over 1 million views on YouTube alone.  Further, both Vic Firth and Mr. Cooper used "shed sessions" and "gospel chops" as metatags to gain search engine priority and to further capitalize upon the goodwill of the respective Marks created by Forrest's years of hard work.

34.     Plaintiff's registrations of his Marks with the USPTO placed Defendant on actual or constructive notice of his exclusive rights in the Marks.  As alleged above, high-level agents of Vic Firth had actual knowledge of Plaintiff's commercial activities, and in particular Plaintiff's SHED SESSIONZ videos, GOSPELCHOPS website, and GC GOSPEL CHOPS drumsticks.

35.     Plaintiff, through counsel, notified Defendant of Plaintiff's rights in and to the Marks on or about June 16, 2016.  The parties, through counsel, exchanged correspondence, and on or about September 27, 2016, Defendant represented that it had "voluntarily taken down from its YouTube channel any 'Shed Sessions' online video sessions and **will no longer use or promote the phrase 'Shed Sessions' on or in connection with online video sessions**." Internet searches conducted as recently as December 18, 2016 indicate that "Shed Sessions" videos remained on www.vicfirth.com (see, *e.g.*, www.vicfirth.com/shed/heyward/).

36.     Defendant's actions are part of a deliberate attempt to divert sales away from Forrest by benefitting unlawfully from the goodwill Forrest has built in the SHED SESSIONZ, GOSPELCHOPS, and GC GOSPELCHOPS trademarks for videos featuring drum musicians in

8
**COMPLAINT**

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

this District and throughout the United States. These actions will continue unless enjoined by this Court.

37. Defendant's deliberate acts have caused and, unless enjoined by this Court, will continue to cause reverse confusion, *i.e.*, pressuring Plaintiff's goods out of the market by utilizing Defendant's superior financial resources and overall brand equity to overwhelm the existing consumer association between Plaintiff and the brands Plaintiff created.

## **FIRST CLAIM FOR RELIEF**

FEDERAL TRADEMARK INFRINGEMENT
(15 U.S.C. § 1114)

38. Plaintiff incorporates the above allegations as if fully set forth herein.

39. Plaintiff owns each of the subject Marks, and uses them in commerce as trademarks.

40. Each of Plaintiff's Marks is a valid, protectable trademark.

41. As described above, Defendant has used each of the Marks in commerce. Defendant has used, in advertising its products, a video series with a title, used as a source-identifier, identical or substantially indistinguishable from Plaintiff's SHED SESSIONZ mark, or of trademarks confusingly similar thereto. Defendant used, and continues to use said source-identifiers in advertising goods similar to those sold by Forrest.

42. Defendant uses metatags, and Search Engine Optimization software specifically designed to make use of such metatags, confusingly similar to Plaintiff's Marks in connection with Defendant's sale, advertising, promotion, distribution, and/or marketing of merchandise similar to that sold by Plaintiff. Such use by Defendant constitutes a use in commerce of Plaintiff's Marks.

43. Each of Defendant's use of the Marks as described herein was without Plaintiff's consent. Each such use is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

44. Forrest is informed and believes that Defendant intentionally adopted and used the Marks to create consumer confusion and traffic off Plaintiff's reputation and goodwill under the Marks. Plaintiff is informed and believes that Defendant's unlawful conduct as set forth

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

herein has been, and continues to be, knowing, willful, deliberate, in bad faith, and in utter disregard of Plaintiff's rights. Plaintiff is accordingly entitled to an award of treble damages, disgorgement of Defendant's unlawful gains and profits, and attorneys' fees and costs of suit.

45. By its wrongful acts, Defendant has caused and unless restrained by the Court will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the SHED SESSIONZ trademark and the GC GOSPELCHOPS trademark, including diversion of customers, lost sales and lost profits. Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

FEDERAL UNFAIR COMPETITION – FALSE DESIGATION OF ORIGIN/FALSE DESCRIPTION
(15 U.S.C. § 1125(a))

46. Plaintiff incorporates the above allegations as if fully set forth herein.

47. Defendant's infringing use of the Marks violates 15 U.S.C. § 1125(a). Defendant has willfully and deliberately used in commerce words, terms, names, and/or false designations of origin that have caused confusion and mistake as to the origin, sponsorship, or approval by Forrest of the products promoted by Vic Firth. This conduct constitutes unfair competition in violation of the Lanham Act.

48. Plaintiff is informed and believes that Defendant's unlawful conduct as set forth herein has been, and continues to be, knowing, willful, deliberate, in bad faith, and in utter disregard of Plaintiff's rights. Plaintiff is accordingly entitled to an award of treble damages, disgorgement of Defendant's unlawful gains and profits, and attorneys' fees and costs of suit.

49. Defendant's conduct has caused and will continue to cause irreparable harm to Forrest, for which Forrest has no adequate remedy at law. Such harm includes but is not limited to the loss of goodwill of Plaintiff's brands and the diminution of value of Plaintiff's intellectual property. Unless enjoined, Defendant will continue the infringing use, further injuring Forrest and confusing and misleading the public.

50. Plaintiff is informed and believes that as a result of its unlawful infringement, Defendant has received revenues and profits to which it is not entitled.

# THIRD CLAIM FOR RELIEF

CONTRIBUTORY FEDERAL TRADEMARK INFRINGMENT
(15 U.S.C. §§ 1114, 1125(a)))

51. Plaintiff incorporates the above allegations as if fully set forth herein.

52. In addition to Vic Firth's direct infringement of Plaintiff's Marks, described above, Vic Firth is also liable for contributory infringement, for inducing others to infringe the Marks and/or for knowingly participating in infringement by others.

53. Specifically, as alleged above, Defendant solicited the cooperation of the Drummers in producing, distributing, and promoting videos infringing on Plaintiff's Marks.

54. Plaintiff is informed and believes that Defendant has derived unlawful gains and profits from its contributory infringement of Plaintiff's Marks.

55. The goodwill of Plaintiff's business under the Marks is of great value, and Plaintiff has suffered monetary damages and irreparable harm as a result of Defendant's unlawful conduct. Plaintiff will suffer irreparable harm if Defendant's contributory infringement be allowed to continue. Plaintiff has no adequate remedy at law.

56. Plaintiff is informed and believes that Defendant's unlawful conduct as set forth herein has been, and continues to be, knowing, willful, deliberate, in bad faith, and in utter disregard of Plaintiff's rights. Plaintiff is accordingly entitled to an award of treble damages, disgorgement of Defendant's unlawful gains and profits, and attorneys' fees and costs of suit.

# FOURTH CLAIM FOR RELIEF

VICARIOUS FEDERAL TRADEMARK INFRINGMENT
(15 U.S.C. §§ 1114, 1125(a)))

57. Plaintiff incorporates the above allegations as if fully set forth herein.

58. Defendant's use of the Marks, or of trademarks confusingly similar thereto, in connection with the sale, advertising, promotion, and marketing of merchandise similar to that sold by Plaintiff constitutes use in commerce by Defendant of the SHED SESSIONZ, GOSPEL CHOPS, and GC GOSPELCHOPS trademarks.

59. Defendant had the duty, right, and ability to control the Drummers' conduct with respect to the videos. Defendant took no action to stop or prevent the infringement of Plaintiff's

11

COMPLAINT

Marks or to disable hyperlinks directing users to the infringing videos, either on Vic Firth's own website or on Cooper's YouTube channel.

60. In preparing and promoting the videos, the Drummers, and each of them, acted as Defendant's agents or employees. The Drummers, in their capacity as agents of Vic Firth willfully used the SHED SESSIONZ trademark and the GC GOSPELCHOPS trademark, or alternatively, a mark confusingly similar to the SHED SESSIONZ trademark and the GC GOSPELCHOPS trademark knowing it is the exclusive property of Forrest and without the permission, authorization or consent of Forrest.

61. Defendant had, and has, a direct financial interest in the infringing activities of the Drummers. As alleged more fully above, one purpose – likely the primary purpose – of Vic Firth's creation and promotion of the videos was to advertise Vic Firth's products. On information and belief, the videos resulted in increased traffic to the sales portal on Vic Firth's website and helped generate sales, revenues, and profits for Vic Firth.

62. The actions of defendant's agents or employees create the false and misleading impression that defendant's goods originate from or are affiliated, connected, associated, sponsored, endorsed or approved by Forrest, that it is authorized by Forrest to use the SHED SESSIONZ trademark and GC GOSPELCHOPS trademark or otherwise causes confusion regarding the origin or endorsement of defendant's goods.

63. Defendant's acts or, alternatively and without limitation, the acts of defendant's agents or employees constitute trademark infringement as defined by Section 32(1) of the Lanham Act, 15 U.S.C. §1125(a) for which plaintiff is entitled to the relief set forth in 15 U.S.C. §1114.

64. 86. Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
FEDERAL TRADEMARK COUNTERFEITING
(15 U.S.C. § 1114)

65. Plaintiff incorporates the above allegations as if fully set forth herein.

COHORN LAW
101 California Street, Suite 2710
San Francisco, CA 94111
Telephone: (415) 993-9005

66. Notwithstanding Forrest's rights in its Marks, Vic Firth – with knowledge of Plaintiff's Marks, and with constructive and actual notice of Plaintiff's federal registration rights in said Marks – promoted videos and advertised its goods in interstate commerce, using spurious trademarks identical to, or substantially indistinguishable from, Forrest's Marks. Defendant's actions were likely to cause confusion, deception, and mistake among the consuming public as to the source or affiliation of such unauthorized videos, and Defendant's actions further deprived Forrest of control over the reputation of the quality of the SHED SESSIONZ videos or the products marketed through the counterfeited videos.

### SIXTH CLAIM FOR RELIEF
VIOLATION OF UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

67. Plaintiff incorporates the above allegations as if fully set forth herein.

68. By its actions described in this Complaint, Defendant has committed unfair, unlawful and/or fraudulent business practices in violation of California Business & Professions Code section 17200 *et seq.* (the "UCL").

69. Defendant has, as described above, violated the Lanham Act by directly infringing Plaintiff's Marks, contributorily and vicariously infringing Plaintiff's Marks, counterfeiting Plaintiff's Marks, and engaging in false designation of origin and/or false description.

70. Defendant's conduct as described herein is anti-competitive and injurious to Plaintiff and to Defendant's other competitors who complied with the laws and policies violated by Defendant, as Defendant's conduct provided an unfair and illegal advantage in the marketplace as a result of, *inter alia*, unlawfully benefitting from the goodwill created by Plaintiff.

71. Defendant's conduct has injured Plaintiff by, *inter alia*, wrongfully diminishing the value of the Marks and depriving Plaintiff of the ability to control the quality of goods marketed under said Marks. As such, Plaintiff is entitled to restitution and injunctive relief.

# SEVENTH CLAIM FOR RELIEF

UNJUST ENRICHMENT/CONSTRUCTIVE TRUST
(Cal. Civ. Code §§ 2223, 2224)

72. Plaintiff incorporates the above allegations as if fully set forth herein.

73. Defendant has knowingly and intentionally capitalized on Plaintiff's investment in the Marks and has thereby received revenue to which it was not entitled. Correspondingly, Plaintiff has been deprived of revenue and earnings as a result of Defendant's unlawful conduct.

74. Plaintiff did not perform the work required to garner goodwill of the Marks gratuitously, but with the expectation that he would receive the profits flowing from such goodwill.

75. All profits earned by Defendant attributable to the unlawful use of Plaintiff's Marks is rightfully the property of Plaintiff.

76. Defendant's retention of said profits is wrongful, inequitable and represents an unjust enrichment of Defendant to the detriment of Plaintiff. Defendant's wrongful retention of such funds makes it an involuntary trustee of said property, and as such Defendant has a duty to re-convey to Plaintiff all such funds.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. That judgment be entered in favor of Forrest and against Defendant on all counts.

2. That the Court issue a preliminary and permanent injunction (a) restraining Defendant, and all individuals acting in concert or participation with it, from future infringement of the subject Marks; (b) directing Defendant (at its own expense) to use its best efforts to recall from all third parties any and all marketing, advertising, and promotional material used in connection with its infringing goods; (c) directing Defendant (at its own expense) to destroy, within ten days of entry of final judgment herein, any and all materials used in connection with the infringement alleged in this action (including but not limited to disabling and removing all videos and hyperlinks to such videos) within Defendant's control; and (d) directing Defendant to file with the Court and serve on Plaintiff's counsel, within 15 days of the entry of any

injunction, a sworn statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendant has complied with the injunction.

    3. That the Court order Defendant to hold in trust, as a constructive trustee for the benefit of Plaintiff, its unlawful gains and profits obtained from its infringing use(s) of Plaintiff's Marks.

    4. That the Court order Defendant to provide Plaintiff with a full and complete accounting of all amounts received by Defendant, and all amounts owed to Plaintiff, as a result of Defendant's unlawful actions, as alleged herein.

    5. That the Court designate this action as an "exceptional case" pursuant to 15 U.S.C. § 1117, entitling Forrest to an award of attorney's fees;

    6. That the Court order Defendant to pay Forrest's general, special, actual, and statutory damages, as follows:

        a. Forrest's damages and Defendant's unlawful gains and profits pursuant to 15 U.S.C. § 1117(a), trebled for Defendant's willful violation of the federally registered trademark rights of Forrest; and

        b. If Forrest so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c).

    7. That the Court order Defendant to pay costs of this action.

    8. That the Court order Defendant to pay prejudgment interest.

    9. Such other and further relief as the Court deems just and proper.

Dated: December 20, 2016          COHORN LAW

                                       By    /s/ Cari A. Cohorn
                                               Cari A. Cohorn
                                               Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: December 20, 2016

COHORN LAW

By  /s/ Cari A. Cohorn

Cari A. Cohorn
Attorneys for Plaintiff